UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAULA ALBERT, LISA R. BARNHILL,
JOHN CAVENDISH, BARBARA DOBRIC,  Case No. 08-13289
JACKIE HONOWAY, SCOTT KURTZ,
and JANICE MARGRETA,            Honorable Nancy G. Edmunds

      Plaintiff(s),

v.

ERIC HOLDER, Attorney
      General of the United States,

      Defendant(s).
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT [12]**

This matter comes before the Court on Defendant's motion to dismiss for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state claims upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6); or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendant's motion is GRANTED.

**I.    Facts**

All Plaintiffs are employed by the Drug Enforcement Administration (DEA) under its Diversion Control Program. (*See* Compl. ¶ 2.) The Diversion Control Program is designed to ensure that controlled substances that have legitimate and legal uses are not diverted into illicit channels. In conjunction with carrying out that program, the DEA employs two broad groups of employees: law enforcement officers (LEO) and non-LEOs. The former

group includes Special Agents, while the later encompasses Diversion Investigators. All Plaintiffs are employed as Diversion Investigators and are, thus, classified by the DEA as non-LOEs. (Compl. ¶ 2.)

Special Agents, as LEOs, are specifically authorized to carry firearms and make arrests. Diversion Investigators, on the other hand, are not authorized to conduct those specific activities reserved for LEOs. Diversion Investigators typically conduct inspections, perform audits, and engage in other activities in support of the Diversion Control Program.

Special Agents, because of their LEO status, are entitled to enhanced benefits that Diversion Investigators are not. For example, Special Agents are eligible for retirement at age 50 with 20 years of service, 5 U.S.C. § 8336(c), and supplemental pay, 5 U.S.C. § 5305. Special Agents, as LEOs, are also subject to a maximum initial entry age authorized by statute. *See* 5 U.S.C. § 3307. The maximum initial entry age statute, however, does not apply to Diversion Investigators, as they are not LEOs. DEA employees' classification as LEO or non-LEO is, thus, determinative of significant employment conditions and benefits.

Plaintiffs allege that, in 2008, they applied for Special Agent positions pursuant to a vacancy announcement and each were prevented from applying because of their age. (Compl. ¶¶ 8-9.) According to the announcement, "[t]he maximum entry age for the Special Agent (Criminal Investigator) position is 37 years old." (Pls.' Answer, Ex. 1.) As each Plaintiff was over the age of 37 at the time of application, each application was denied. (Compl. ¶¶ 3, 9.)

As a result of that denial, Plaintiffs filed this action alleging: (1) the DEA's refusal to consider their applications for the Special Agent positions violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* (Compl. ¶¶ 18-29.); and (2) a "mixed

2

case," under 5 U.S.C. § 7702, allowing them to litigate a discrimination claim and a non-discrimination claim in this forum. (Compl. ¶¶ 30-40.)

## II. Motion to Dismiss Standards

### A. Rule 12(b)(1) Standard

Subject matter jurisdiction is governed by Fed. R. Civ. P. 12(b)(1). A motion to dismiss pursuant to Rule 12(b)(1) may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction. *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). When a defendant challenges subject matter jurisdiction on a factual basis, the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990).

### B. Rule 12(b)(6) Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombley*, ___ U.S. ___, 127 S. Ct. 1995, 1964-65 (2007). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, ___

U.S. ___, 129 S. Ct. 1937, 1949 (2009) The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1950 (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Id.* (internal quotation marks and citation omitted). Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 1949 (internal quotation marks and citation omitted).

### III. Analysis

#### A. ADEA Claim (DEA's Maximum Age Policy)

The Department of Justice (DOJ) established a maximum age of 37 for initial entry into LEO positions within the DEA, including the Special Agent position. (Def.'s Mot., Ex. E.) Because Plaintiffs were older than the maximum initial entry age, their applications for Special Agent were denied. (Compl. ¶¶ 8-9.) Consequently, Plaintiffs seek relief under the

ADEA claiming that the DEA's refusal to consider their applications constitutes age discrimination. (Compl. ¶¶ 18-29.) Plaintiffs allege that Defendant violated the ADEA in that:

> It shall be unlawful for an employer--
> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
> (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age.

29 U.S.C. § 623(a). Defendant argues that such claims are precluded by an exception to the ADEA: specifically 5 U.S.C. § 3307 (d) and (e). Section 3307 grants federal agencies the authority to establish maximum age limits for original appointments to LEO positions, as defined by the two primary retirement systems for federal civilian employees–the Civil Service Retirement System (CSRS), 5 U.S.C. § 8331 *et seq.*, and the Federal Employees' Retirement System (FERS), 5 U.S.C. § 8401 *et seq.*[1]

---

[1] For those covered by CSRS:

> "law enforcement officer" means an employee, the duties of whose position are primarily the investigation, apprehension, or detention of individuals suspected or convicted of offenses against ... the United States ...

5 U.S.C. § 8331(20). For those covered by FERS, the statute provides:

> the term "law enforcement officer" means–
> (A) an employee, the duties of whose position--(I) are primarily--(I) the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the ... United States, or (II) the protection of officials of the United States against threats to personal safety; and (ii) are sufficiently rigorous that employment opportunities are required to be limited to young and vigorous individuals, as determined by the Director considering the recommendations of the employing agency . . .

5 U.S.C. § 8401(17).

5

### 1. Statutory Authority for the DEA's Maximum Age Policy

Congress passed the ADEA in 1967 to combat improper treatment of federal employees on the basis of age. The statute currently states, in part, that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age ... shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). The purpose of the ADEA "is to prevent arbitrary discrimination in the government workplace on account of age, and to compel the employer to focus on the individual's actual abilities given the responsibilities of the particular job." *Francke v. U.S. Dept. of the Treasury*, 721 F.Supp. 47, 50 (S.D. N.Y. 1989).

In 1974, Congress enacted Public Law 93-350 amending 5 U.S.C. § 3301 *et seq.* with respect to the retirement of certain law enforcement personnel. This statute was a "major piece of legislation designed to enhance the 'youth and vigor' of federal law enforcement." *Stewart v. Smith*, 673 F.2d 485, 487 (D.C. Cir. 1982). Along with provisions on mandatory retirement, 5 U.S.C. § 8335(b), and incentives for early retirement, 5 U.S.C. § 8339(d), Public Law 93-350 provided federal agencies employing LEOs the authority to set maximum initial entry ages for appointment to those law enforcement positions. Specifically, 5 U.S.C. § 3307 provides:

> (d) The head of any agency may determine and fix the ... *maximum limits of age* within which an *original appointment* may be made to a position as a *law enforcement officer* ..., as defined by section 8331(20) [CSRS] ...
>
> (e) The head of an agency may determine and fix the *maximum age limit* for an *original appointment* to a position as a ... *law enforcement officer*, as defined by section 8401(17) [FERS] ...

5 U.S.C. § 3307 (emphasis added). When Public Law 93-350 was passed, it directed that an agency had to receive the concurrence of the Civil Service Commission, now Office of

6

Personnel Management (OPM),[2] "in its determination that the relevant employees are law enforcement officers" before the maximum initial entry age rule could be applied. *Stewart*, 673 F.2d at 488. Under 5 U.S.C. §§ 8331(20) and 8401(17), for CSRS and FERS respectively, "the term 'law enforcement officer' is defined for all of Public Law 93-350's hiring and retirement provisions." *Id.* This concurrence responsibility has since been delegated by OPM to agency heads, with OPM retaining oversight authority.[3]

In 1978, Congress amended the ADEA when it enacted the Age Discrimination in Employment Act Amendments of 1978. The 1978 amendments eliminated most federal maximum age limits, however, it left untouched the mandatory maximum retirement age limits for LEOs.[4] The amendments also left, undisturbed, federal agencies' authority, under 5 U.S.C. § 3307, to set maximum initial entry age limits for LEO positions.

---

[2] *See* The Civil Service Reform Act of 1978, Public Law 95-454 (Oct. 13, 1978).

[3] For those positions covered by CSRS, OPM initially retained sole authority to determine whether a particular job met the statutory definition of LEO. However, pursuant to 5 U.S.C. § 1104, which allows OPM to refer personnel management to agency heads, OPM delegated the authority to make such determinations to the relevant agency heads. 5 C.F.R. § 831.901 *et seq.* Notwithstanding such delegation, OPM retained oversight authority over agency heads' LEO determinations. *See* 5 C.F.R. § 831.911. For those positions covered by FERS, agency heads have always been authorized to make LEO determinations. *See* 5 C.F.R. §§ 842.803(a), (b), (c). OPM also retains oversight authority over LEO determinations for positions covered by FERS. 5 C.F.R. § 842.808. Although Plaintiffs argue that their Complaint is not a request for retirement benefits and that the statutes cited do not apply to the determination of LEO classification, such an argument is without merit. As held by the court in *Stewart*, civil service statutes, specifically CSRS, are applicable in the "determination that ... relevant employees are law enforcement officers" subject to the maximum initial entry age requirement for LEO appointments under 5 U.S.C. § 3307. *Stewart*, 673 F.2d at 488.

[4] The 1978 amendments also left untouched the mandatory retirement provisions for fire fighters, air traffic controllers, Central Intelligence Agency employees, and Foreign Service officers. *See, e.g.*, *Vance v. Bradley*, 440 U.S. 13 (1979) (upholding mandatory retirement age provision in Foreign Service retirement system).

7

In *Stewart v. Smith*, 673 F.2d 485 (D.C. Cir. 1982), the court analyzed the interplay of 5 U.S.C. § 3307 and the ADEA. After fully discussing the language and policy of the two statutes, the court held that § 3307 "served to remove maximum entry ages for law enforcement officers from the scope of the ADEA and represents Congress' judgment that such maximum entry ages are an appropriate tool for controlling the age composition of an agency's work force." *Id.* at 500. This result is consistent with Congress' "clear intention" of giving "agencies the flexibility to use maximum age entry rules in order to achieve the statute's overall objective of securing a 'young and vigorous' law enforcement work force." *Id.* at 493. Other circuits, including the Sixth, have also adopted this view–that § 3307 and the ADEA may be reasonably interpreted as consistent with each other. *See, e.g.*, *Benford v. Frank*, 943 F.2d 609 (6th Cir. 1991) and *Patterson v. United States Postal Service*, 901 F.2d 927 (11th Cir. 1990) (both holding that the U.S. Postal Service's policy of refusing to appoint applicants over the age of 35 to Postal Inspector is not a violation of the ADEA, and that § 3307 is an exception to ADEA). *See also Reed*, 146 F.3d at 394 ("It is well established that the maximum entry age for law enforcement officers is a valid exception to the ADEA.").

The applicability of § 3307 as an exception to the ADEA was also considered in *Golembiewski v. Johnson*, 934 F.Supp. 849 (E.D. Mich. 1996), a matter factually similar to the one at hand. In that case, two General Services Administration (GSA) non-LEO police officers applied for LEO Criminal Investigator positions. Both were rejected because they were over the maximum initial entry age of 37 established for that position in accordance with § 3307. They sued under the ADEA, claiming that the agency's age restriction constituted unlawful age discrimination. The court, citing 5 U.S.C. §§ 3307(d) and (e), held

that the civil service laws carved out an exception to the ADEA for federal LEO positions, such as the ones to which the plaintiffs had applied. Accordingly, plaintiffs could not state an age discrimination claim for failure to be hired, post-age 37, for the GSA LEO positions to which they applied.

### 2. Application of 5 U.S.C. § 3307 to Plaintiffs' ADEA Claim

Section 3307, as applied to the retirement systems for federal civilian employees, permits agency heads to "determine and fix the maximum age limit for an original appointment to a position as a law enforcement officer." 5 U.S.C. § 3307(e). Pursuant to this authority, in 1991 the Attorney General established the maximum initial entry age for LEOs–such as DEA Special Agents–as 37, and the maximum retirement age as 57.

Under § 3307, where an agency head determines and fixes the maximum initial entry age limit for an appointment to a position as a LEO, only two categories of applicants will be permitted to apply for those LEO positions: (1) those under the maximum initial entry age; and (2) those who, although over the maximum initial entry age, are currently employed under a position classified as "law enforcement officer"–as that applicant would not be seeking an "original appointment." *See* 5 U.S.C. §§ 3307(d), (e). Here, Plaintiffs do not fall within the former category, as all Plaintiffs are over the maximum initial entry age for the LEO positions to which they applied. Plaintiffs, however, contend that § 3307 is not applicable to them arguing that they fall within the later category. Specifically, Plaintiffs claim that their application for the Special Agent position would not be an "original appointment" to a position as a LEO.

Although Plaintiffs are not currently employed by the DEA under a position classified as LEO, Plaintiffs nevertheless argue that they do not qualify as "original" appointees under

9

5 U.S.C. § 3307.[5] Plaintiffs allege that their current Diversion Investigator positions, although classified as non-LEO, should be recognized as LEO.[6] In support of this, Plaintiffs attempt to offer evidence of their Diversion Investigator job functions, the type of activities they perform on a daily basis, and the responsibilities entailed in their professional duties. Plaintiffs contend that "having performed as LEO in all but name, the maximum age should not have barred their application, in as much as once an individual is a LEO, the individual remains LEO." (Pls. Answer at 4-5.)

Plaintiffs assumption, however, is not accurate: in as much as once an individual is a LEO, the individual does not necessarily remain a LEO. *See Francke*, 721 F.Supp. 47. In *Francke*, the plaintiff was employed by the U.S. Customs Service from 1970 through 1989 holding a variety of positions. *Id.* at 49. From 1970 through 1973 the plaintiff held the position of Security Officer, a position classified as LEO. *Id.* From 1973 on, however, the plaintiff was employed in non-LEO positions. *Id.* In 1986, at the age of 50, the plaintiff

---

[5] Plaintiffs state that they "are not claiming ... that they were LEOs. But because they demonstrated they performed as LEOs, and are still performing as LEOs, they are contesting the justification barring them from being able to apply for the opportunity to become LEOs." (Pls. Answer at 5.)

[6] The issue of Diversion Investigators' entitlement to LEO status has been the subject of extensive administrative activity over the years. One Plaintiff in this case–Janice Margreta–was the lead complainant in an action brought before the Merit Systems Protection Board (MSPB), in which she argued that Diversion Investigators should be classified as LEOs. In an opinion dated November 22, 2004, a MSPB Administrative Judge rejected the claim. (Def.'s Mot., Ex. C.) The complainants in that action did not appeal the Administrative Judge's decision. Additionally, in 2007, three Plaintiffs invoked the agency's EEO procedure requesting a position reclassification: from non-LEO to LEO. (Def.'s Mot., Ex. A.) The DOJ issued final agency decisions as to all three complainants determining that they were not "aggrieved employees" within the meaning of the discrimination laws, as they had not identified an injury suffered by virtue of their non-LEO status. (Def.'s Mot., Ex. B.) That final agency decision was not appealed, and, according to Plaintiffs, this matter arose separately from and subsequently to the 2007 denials.

"applied for a new position in the Customs Service for which the agency policy had set a maximum entry age of 34." *Id.* at 48. The plaintiff "was turned down for the job based on his age alone." *Id.* The plaintiff argued that because he was previously employed as a LEO while under the age of 35, the application for a LEO position in 1986 was not an original appointment under § 3307. *Id.* at 52. The court disagreed holding that

> [t]his is not a sensible reading of the law. If it were true, then simply by holding a law enforcement job while under age 35 an employee could guarantee himself the chance to apply for law enforcement positions throughout his career. Such an interpretation would create a significant and irrational loophole in the statutory scheme of Public Law 93-350. This Court therefore holds that section 3307(d) does apply to plaintiff. Plaintiff's argument that his rejection for the post of [LEO] ... is subject to the ADEA must fail as a matter of law. Section 3307(d) creates a clear statutory exception to the ADEA.

*Id.* at 52

The principal issue raised by Plaintiffs is, thus, notwithstanding their Diversion Investigator positions' classification as non-LEO, they have been acting in a LEO capacity prior to reaching the age of 37, thereby removing them from the "original appointment" language of § 3307. Accordingly, Plaintiffs are requesting this Court to make a determination that they should be recognized as LEOs–or, at least, "constructive" LEOs. In other words, Plaintiffs are seeking to appeal the classification of Diversion Investigators as non-LEOs to this Court.

This very issue was decided in *Golembiewski* where Judge Zatkoff held that the district court was not the forum in which raise such an appeal. *Golembiewski*, 934 F.Supp. at 851-53. In *Golembiewski*, the plaintiffs' argued

> that § 3307(d) and (e) are inapplicable to their Age Discrimination in Employment Act claims in that they only apply to maximum age limits for an "original appointment" to a law enforcement officer position. Plaintiffs claim that whereas their positions as federal police officers have been improperly designated by the GSA as non-law enforcement officer positions, their applications for the criminal investigator positions are not properly considered applications for "original appointments." Plaintiffs' argument is dependant upon their contention that they have been improperly designated as non-law enforcement officer employees by the GSA.

*Id.* at 851. Like the plaintiffs in *Golembiewski*, Plaintiffs argue that their Diversion Investigator positions have been improperly classified as non-LEO positions and that their applications for Special Agent positions should not have been considered "original appointments."

The court in *Golembiewski*, relying on the "procedures set forth in the Civil Services Reform Act of 1978 [CSRA] ... and the principles set forth in *United States v. Fausto*, 484 U.S. 439 (1988)," held that it was "without jurisdiction to entertain a challenge to the GSA's designation of federal police officer positions as non-law enforcement officer positions." *Golembiewski*, 934 F.Supp. at 851. *See also Ryon v. O'Neill*, 894 F.2d 199, 203-04 (6th Cir. 1990) (holding that the CSRA precluded judicial review of personnel reassignment action taken by the Defense Mapping Agency, and likewise, a federal employee's discrimination claim, where no such review was provided for in the CSRA itself).

> [T]he relevant question in determining whether the Court has jurisdiction to entertain a challenge to the instant administrative action is whether the action falls within the scope of, and is, therefore, preempted by, the Civil Service Reform Act.

*Golembiewski*, 934 F.Supp. at 852. The *Golembiewski* court held that position classification determinations fell within the scope of, and were, therefore, preempted by the Civil Service Reform Act. *Golembiewski*, 934 F.Supp. at 852. In so holding, the court stated that

"Congress has provided plaintiffs with a readily available avenue to challenge the law enforcement officer designation ... through the Civil Services Reform Act ... [and] that [the court] is accordingly without jurisdiction to entertain plaintiffs' challenge to their status as non-law enforcement officers." *Id.* at 853. A similar result is appropriate here: this is not the forum to appeal position classifications.[7]

Moreover, Plaintiffs' reliance on *Reed* and *Stewart*, *supra*, in support of this Court's jurisdiction is misguided. Plaintiffs argue that both *Reed* and *Stewart* stand for the proposition that district courts have subject matter jurisdiction to review the merits of an agency's decision to classify a particular position as either LEO or non-LEO. This Court, however, disagrees. Both *Reed* and *Stewart* evaluated whether the DOJ acted within its statutory authority by classifying all Bureau of Prison employees as LEOs. *See Reed*, 146 F.3d 392; *Stewart*, 673 F.2d 485. Unlike *Reed* and *Stewart*, Plaintiffs are not asking this Court to determine if the DOJ exceeded its authority in classifying all DEA employees as LEOs. To the contrary, Plaintiffs are asking this Court to review their individual job functions and day-to-day activities to individually reclassify each of them as LEOs.

Further, Plaintiffs have not exhausted available administrative remedies. Instead, they are asking this Court to determine, in the first instance, that because they have allegedly

---

[7] Agency head determinations regarding retirement benefits are appealable to the MSPB (5 C.F.R. §§ 831.910, 842.807). If a claimant is not successful, then appeals from the MSPB lie within the exclusive jurisdiction of the Federal Circuit, notwithstanding mixed cases. *See* 5 U.S.C. §§ 7702-7703; 28 U.S.C. § 1295. LEO classifications, as determined by agency heads, are also appealable directly to OPM. (*See* 5 U.S.C. § 5112). Concurrent with these proceedings, at least five of the plaintiffs–Honoway, Kurtz, Albert, Dobric and Margreta–have been pursuing a classification appeal before the Office of Personnel Management (OPM). (Def.'s Mot., Ex. D)

13

functioned as LEOs that they are in fact LEOs, thereby subverting available administrative means that have been statutorily provided by Congress to reclassify employees.[8]

The authority Plaintiffs present does not support the district courts' authority to review an agency's classification of DEA employees. As stated above, these matters are reserved for OPM and, in appropriate cases, the MSPB. As an exception to the ADEA, 5 U.S.C. § 3307 permits the establishment of maximum initial entry age for LEO positions within the DEA. A maximum initial entry age was fixed at 37 for Special Agent LEO positions. All Plaintiffs are over the age of 37 and none of the Plaintiffs are currently employed by the DEA in positions classified as LEOs. Because this Court is without jurisdiction to entertain LEO position classification appeals, Plaintiffs are unable to demonstrate that their application would fall outside of an "original appointment" under § 3307. Plaintiffs, therefore, have failed to state a claim of age discrimination under the ADEA. Accordingly, Defendant's motion to dismiss the Plaintiffs' ADEA claim is granted.

**B. Mixed Case**

Plaintiffs also seek relief under 5 U.S.C. § 7702, claiming a "mixed case." Plaintiffs' mixed case claim, however, is flawed both substantively and procedurally.

**1. Substantive Barriers to Plaintiffs' Mixed Case**

---

[8] *See, e.g.*, *Ryon*, 894 F.2d at 203, 204 ("It is hard to imagine that such an intricate statutory scheme was intended as a mere alternative to direct review in the federal courts ... [T]he text of the [CSRA], the structure of review it establishes, and the legislative history of the Act, all lead ineludibly to the conclusion that Congress intended review of agency reassignment decisions to be confined to the specific procedures set out in the text of the Civil Service Reform Act.").

A mixed case is defined as "a compliant of employment discrimination filed with a federal agency based on ... age ... related to or stemming from an action that can be appealed to the Merit Systems Protection Board (MSPB)." 5 C.F.R. § 1614.302. It is "an adverse personnel action subject to appeal to the MSPB coupled with a claim that the action was motivated by discrimination." *Butler v. West*, 164 F.3d 634, 638 (D.C. Cir. 1999). *See also Valentine-Johnson v. Roche*, 386 F.3d 800, 802 (6th Cir. 2004) ("A mixed case is one where a federal employee alleges that she suffered from an adverse agency action appealable to the Merit Systems Protection Board (MSPB), and that the action was also based on discrimination.") For example, if the person believes that she has been the subject of illegal discrimination and that this discrimination is the basis for the adverse personnel action, the individual may file a "mixed" case.[9] When bringing a mixed case in district court, the discrimination claim will be subject to *de novo* review, "while the non-discrimination claim will be reviewed on the administrative record created before the EEO office or the MSPB, subject to the arbitrary and capricious standard." *Greenhouse v. Geren*, 574 F.Supp.2d 57, 66 (D. D.C. 2008).

Plaintiffs contend that this action meets the substantive requirements of pleading a mixed case: an adverse personnel action (a non-discrimination claim that is appealable to the MSPB) coupled with a claim that the personnel action was motivated by discrimination. In support of their claim, Plaintiffs allege: (1) an adverse personnel action, resulting from

---

[9] Mixed cases specifically include a "case of any employee or applicant for employment who ... (A) has been affected by an action which the employee or applicant may appeal to the Merit Systems Protection Board, and (B) alleges that a basis for the action was discrimination prohibited by ... (iv) sections 12 and 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 631, 633a)." 5 U.S.C. § 7702.

the classification of Diversion Investigators as non-LEOs, based on the DEA's refusal to accept their applications for LEO Special Agent positions and its failure to permit Diversion Investigators who perform criminal cases to receive the same salary and benefits as Special Agents; (2) that the adverse personnel action is a violation of the CSRA and is appealable to the MSPB;[10] and (3) that the adverse personnel action was based on age discrimination in violation of the ADEA.

In other words, Plaintiffs allege a discrimination claim that arises out of the DEA's decision not to consider them for Special Agent LEO positions and a non-discrimination claim that arises out of the DEA's classification of Diversion Investigators as non-LEOs. The complained of acts–the alleged violation of the ADEA and the improper classification of Diversion Investigators as non-LEOs–do not fall within the ambit of a mixed case. The discrimination claim and the non-discrimination claim alleged by Plaintiffs are too far removed in time and place, and involve different decision makers. Plaintiffs' age discrimination claim, therefore, is not sufficiently related to or stemming from the adverse personnel action to fall within the definition of a mixed case under § 7702. Additionally, as discussed above, Plaintiffs have failed to state a discrimination claim under the ADEA, and such a failure is also fatal to their mixed case. *See, e.g.*, *Papritz v. U.S. Dept. of Justice*,

---

[10] Plaintiffs, however, have not cited any statutory provisions in the CSRA that have been allegedly violated. Appealable actions are those agency actions expressly made appealable to the MSPB by any law, rule, or regulation. *See* 5 U.S.C. § 1204(a)(1). Adverse personnel actions that are appealable to the MSPB include: a removal; a suspension greater than 14 days; a reduction in pay; and a furlough of 30 days or less. 5 U.S.C. § 7512. An agency's failure to select an applicant for a vacant position, however, is generally not appealable to the MSPB and claims of unlawful conduct in the selection process ordinarily must be brought before other forums. *See, e.g.*, *Prewitt v. Merit Systems Protection Bd.*, 133 F.3d 885, 886 (Fed. Cir. 1998).

No. 86-3458, 1987 WL 10877, at *2 (D. D.C. May 1, 1987) (holding that a mixed case should be dismissed, as the district court lacks subject matter jurisdiction over the non-discrimination claim, where the discrimination claim is dismissed for failure to state a claim).[11] Plaintiffs have, therefore, failed to provide a sufficient factual basis to establish a mixed case. Accordingly, Plaintiffs' mixed case claim is dismissed.

### 2. Procedural Barriers to Plaintiffs' Mixed Case

In addition to the substantive requirement of pleading cognizable discrimination and non-discrimination claims, there are also a number of procedural steps to the administrative processing of a mixed case. In bringing a mixed case, the employee is required to either file a mixed case complaint with the agency's EEO office or by filing a mixed case appeal directly with the MSPB. *Butler v. West*, 164 F.3d 634, 638-39 (D.C. Cir. 1999).

> An employee who intends to pursue a mixed case has several paths available to her. At the outset, the aggrieved party can choose between filing a "mixed case complaint" with her agency's EEO office and filing a "mixed case appeal" directly with the MSPB. By statute, the relevant agency EEO office and the MSPB can and must address both the discrimination claim and the appealable personnel action. Should she elect the agency EEO route,

---

[11] *But see Afifi*, 924 F.2d at 64 (holding that the district court may dismiss a mixed case involving an appeal of an adverse agency action where it finds that the plaintiff engrafted a sham discrimination claim onto the complaint in order to defeat the federal circuit's jurisdiction; and where a discrimination claim is legitimate but nonetheless quickly evaporates, as, for example, by an affirmative defense, the district court has discretion either to retain jurisdiction over the nondiscrimination claim or transfer the case to the Federal Circuit). This matter is distinguishable from *Afifi*. First, *Afifi* was a mixed case appeal from the MSPB; and second, the plaintiffs in *Afifi* would have been unfairly prejudiced if the case was dismissed as any appeal to the federal circuit had long expired. Here, Plaintiffs are not appealing a final decision from the MSPB and Plaintiffs will not be unfairly prejudiced by dismissal of their Complaint, as they are not disclosed from raising their complaint in other forums. Further, to permit the district court's review of a mixed case, where a plaintiff has not been able to state a discrimination claim to survive a motion to dismiss, would provide a back door to judicial review of non-LEO position classification determinations (that are appropriately reserved for OPM and MSPB).

> within thirty days of a final decision she can file an appeal with the MSPB or a civil discrimination action in federal district court. If 120 days pass without a final decision from the agency's EEO office, the same avenues of appeal again become available: the complainant can file either a mixed case appeal with the MSPB or a civil action in district court.
>
> When a complainant appeals to the MSPB, either directly or after pursuing her claim with the agency EEO office, the matter is assigned to an Administrative Judge who takes evidence and eventually makes findings of fact and conclusions of law. The AJ's initial decision becomes a final decision if neither party, nor the MSPB on its own motion, seeks further review within thirty-five days. However, both the complainant and the agency can petition the full Board to review an initial decision. Should the Board deny the petition for review, the initial decision becomes final; if the Board grants the petition, its decision is final when issued. At this point, the complainant again has a choice: within thirty days of receiving a final decision from the MSPB, she can either appeal the discrimination claim to the EEOC, or appeal the entire claim (or any parts thereof) to the appropriate district court. Finally, if the MSPB fails to render a judicially reviewable decision within 120 days from the filing of a mixed case appeal, the aggrieved party can pursue her claim in federal district court.

*Butler*, 164 F.3d at 638-39 (citations omitted). Mixed cases may, therefore, be brought in federal district court in one of four ways: (1) within 30 days of a final decision from an agency's EEO office; (2) if 120 days pass without a final decision from an agency's EEO office; (3) within 30 days of a final decision from the MSPB; and (4) if 120 days pass without a final decision from the MSPB.

Here, Plaintiffs have not demonstrated that they have exhausted the administrative procedures necessary to bring a mixed case before this Court. Specifically, Plaintiffs have not alleged that they have filed a mixed case complaint with the DEA's EEO office, they have not provided a final decision from the DEA's EEO office from which this Court may

review, nor have Plaintiffs alleged that 120 days have passed without a final decision from the DEA's EEO office.[12]

## IV.   Conclusion

For the foregoing reasons, Defendant's motion to dismiss, pursuant to Rule 12(b)(1) and 12(b)(6) is GRANTED, and Plaintiffs' complaint is dismissed.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  October 20, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 20, 2009, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

---

[12] It is noted that Plaintiffs have alleged that they provided their EEO officer with notice of their intent to file suit under the ADEA pursuant to 29 C.F.R. § 1614.201. However, it does not appear that Plaintiffs have filed a mixed case compliant, alleging both discrimination and non-discrimination claims, with the EEO office. As discussed above, such a filing is a condition precedent to this Court's jurisdiction. *See also* 29 C.F.R. § 1614.302.

19